**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| ELLIE BLEY, individually, and on behalf of all others similarly situated, | |
| Plaintiff, | Case No. _____ |
| v. | CLASS ACTION |
| FRANCESCA'S ACQUISITION, LLC, | |
| Defendant. | **JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT**

Plaintiff Ellie Bley ("Plaintiff"), individually, and on behalf of all others similarly situated, brings this action against Francesca's Acquisition LLC ("Francesca's" or "Defendant"), by and through her attorneys, and alleges, based upon personal knowledge as to her own actions, and based upon information and belief as to all other matters, as follows:

## I.     **INTRODUCTION**

1.      Francesca's is a retail company which operates a nationwide chain of 457 boutiques in 45 states selling fashion apparel, jewelry, accessories, and gifts.

2.      As part of its retail operations Francesca's collects, maintains, and stores highly sensitive personal information belonging to its customers and employees, including, but not limited to: Social Security numbers, dates of birth, full names, addresses, telephone numbers, driver's license numbers (collectively, "personally identifying information" or "PII"), as well as financial account/payment card information including credit or debit card numbers, along with security and access codes and PINs ("financial account information") (collectively, "Private Information").

3.    On January 31, 2023, Francesca's experienced a data breach incident in which unauthorized cybercriminals accessed its information systems and databases and stole Private Information belonging to Plaintiff and the Class (the "Data Breach"). Francesca's discovered this unauthorized access on January 31, 2023, at which time it launched an investigation with the aid of third-party data security specialists. This investigation, which concluded on August 8, 2023, determined that Private Information belonging to Francesca's customers and employees had been stolen by cybercriminals in the successful attack. On September 25, 2023, Francesca's began issuing data breach notices to individuals whose information was believed to have been stolen in this incident.[1]

4.    As Francesca's stored and handled such highly-sensitive Private Information, it had a duty and obligation to safeguard this information and prevent unauthorized third parties from accessing this data.

5.    Ultimately, Francesca's failed to fulfill these obligations as unauthorized cybercriminals breached Francesca's information systems and databases and stole vast quantities of Private Information belonging to Plaintiff and the Class. This breach and the successful exfiltration of Private Information were direct, proximate, and foreseeable results of multiple failings on the part of Francesca's.

6.    The data breach occurred because Francesca's inexcusably failed to implement reasonable security protections to safeguard its information systems and databases. Thereafter, Francesca's failed to timely detect this data breach, and did not learn of the full extent of the Data Breach until 189 days after the Data Breach occurred. And prior to the Data Breach, Francesca's failed to inform the public that its data security practices were deficient and inadequate. Had

---

[1] This Notice, which contains further information regarding the data security breach incident, is attached as **Exhibit A**.

Plaintiff and Class members been made aware of this fact, they would have never provided their Private Information to Francesca's.

7.    In addition to the failures that caused the breach, Francesca's subsequent handling of the Data Breach was also suspect. Francesca's failed to provide notice to Plaintiff and Class members that their information was stolen until *nearly eight months* after it first discovered the Data Breach. As such, Francesca's prevented Plaintiff and Class members from having even the opportunity to mitigate their damages until nearly eight months after the Data Breach; eight months that cybercriminals had unfettered access to Francesca's networks to peruse, steal, and exploit Plaintiff's and Class members' Private Information completely uninterrupted.

8.    As a result of Francesca's negligent, reckless, intentional, and/or unconscionable failure to adequately satisfy its contractual, statutory, and common-law obligations, Plaintiff and Class members suffered injuries as a result of Francesca's conduct including, but not limited to:

- Lost or diminished value of their Private Information;

- Out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their Private Information;

- Lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including but not limited to the loss of time needed to take appropriate measures to avoid unauthorized and fraudulent charges;

- Time needed to change usernames and passwords on their accounts;

- Time needed to investigate, correct and resolve unauthorized access to their accounts; time needed to deal with spam messages and e-mails received subsequent to the Data Breach;

- Charges and fees associated with fraudulent charges on their accounts; and the continued and increased risk of compromise to their Private Information, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect their Private Information.

9.    Accordingly, Plaintiff brings this action on behalf of all those similarly situated to seek relief for the consequences of Defendant's failure to reasonably safeguard Plaintiff's and Class members' Private Information; its failure to reasonably provide timely notification that Plaintiff's and Class members' Private Information had been compromised by an unauthorized third party; and for intentionally and unconscionably deceiving Plaintiff and Class members concerning the status, safety, location, access, and protection of their Private Information.

## II.    PARTIES

### Plaintiff Ellie Bley

10.    Plaintiff Bley is a resident and citizen of Pennsylvania. Plaintiff Bley was an employee of Defendant from 2017 to 2018 and received a data breach letter from Defendant.

### Defendant Francesca's LLC

11.    Defendant Francesca's Acquisition, LLC is a Delaware Liability Company with its principal place of business located at 8760 Clay Road, Houston, Texas 77080. Defendant is a retail company that operates a nationwide chain of 457 boutiques in 45 states selling fashion apparel, jewelry, accessories, and gifts.

## III.    JURISDICTION AND VENUE

12.    This Court has subject-matter jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(2), because this is a class action in which the matter in controversy exceeds the sum of $5,000,000, the number of class members exceeds 100, and at least one Class member is a citizen of a state different from Defendant. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) because all claims alleged herein form part of the same case or controversy.

13.    This Court has personal jurisdiction over Defendant because Defendant is organized under the laws of Delaware.

14.     Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's and Class members' claims occurred in this District.

## IV.    FACTUAL ALLEGATIONS

### A.    Francesca's – Background

15.     Francesca' sells fashion apparel, jewelry, accessories, and gifts through its 457 boutiques in 45 of states. As part of its operations, Defendant collects, maintains, and stores the highly sensitive Private Information provided by its current and former customers and employees, including but not limited to: full names, addresses, Social Security numbers, dates of birth, driver's license numbers, financial account information including credit and debit card numbers along with security and access codes and PINs.

16.     On information and belief, Francesca's had failed to implement necessary data security safeguards at the time of the Data Breach. This failure resulted in cybercriminals accessing the Private Information of Francesca's current and former customers and employees—Plaintiff and Class members.

17.     Current and former customers and employees of Defendant made their Private Information available to Francesca's with the reasonable expectation that any entity with access to this information would keep that sensitive and personal information confidential and secure from illegal and unauthorized access. Further, Plaintiff and Class members had the reasonable expectation that, in the event of any unauthorized access, that Francesca's would provide them with prompt and accurate notice.

18.    These expectations were objectively reasonable and based on an obligation imposed on Francesca's by statute, regulations, industrial custom, and standards of general due care.

19.    Unfortunately for Plaintiff and Class members, Francesca's failed to carry out its duty to safeguard sensitive Private Information and provide adequate data security. As a result, it failed to protect Plaintiff and Class members from having their Private Information accessed and stolen during the Data Breach.

**B.    The Data Breach**

20.    According to information provided by Francesca's, cybercriminals breached Francesca's information systems and databases on January 31, 2023 and Francesca's engaged a third-party team "immediately upon discovery."[2]

21.    Francesca's conducted an investigation into the breach to "determine the full nature and scope of the incident," including the full extent of Private Information access in the breach.[3] This investigation concluded on or about August 8, 2023, and determined that cybercriminals had successfully breached the systems on or about January 31, 2023, successfully stealing Private Information such as full names, Social Security numbers, driver's license/state identification numbers, financial account and/or payment card information.[4]

22.    On September 25, 2023, which was nearly eight months after Francesca's discovered the breach, Francesca's began dispatching data breach notices to all individuals it believed was affected by this data security incident.[5]

---

[2] Ex. A.
[3] *Id.*
[4] *Id.*
[5] *Id.*

23.     Francesca's estimates that the Private Information belonging to at least 58,387 individuals was compromised in this incident.[6]

C.    **Francesca's Many Failures Both Prior to and Following the Breach**

24.     Defendant collects and maintains vast quantities of Private Information belonging to Plaintiff and Class members as part of its normal operations. The data breach occurred as direct, proximate, and foreseeable results of multiple failings on the part of Defendant.

25.     First, Defendant failed to implement reasonable security protections to safeguard its information systems and databases.

26.     Second, Defendant failed to timely detect this Data Breach with Defendant only learning the full extent of the Data Breach 189 days after the unauthorized actors gained access to Defendant's systems. This delayed detection provided these cybercriminals with ample time to access, peruse, steal, and exploit the sensitive Private Information of Defendant's customers and employees.

27.     Third, Defendant failed to inform the public that its data security practices were deficient and inadequate. Had Plaintiff and Class members been aware that Defendant did not have adequate safeguards in place to protect such sensitive Private Information, they would have never provided such information to Defendant.

28.     In addition to the failures that lead to the successful breach, Defendant's failings in handling the breach and responding to the incident exacerbated the resulting harm to Plaintiff and the Class.

29.     Defendant did not inform Plaintiff and Class members that their information was stolen until 237 days after it discovered the intrusion. This delay in informing the Class virtually

---

[6] *See* https://apps.web.maine.gov/online/aeviewer/ME/40/ff7c9ad6-019a-4bf8-a852-0e5c80c70c76.shtml (last visited October 10, 2023).

ensured that the cybercriminals who stole this Private Information could monetize, misuse and/or disseminate that Private Information before Plaintiff and Class members could take affirmative steps to protect their sensitive information. As a result, Plaintiff and Class members will suffer indefinitely from the substantial and concrete risk that their identities will be (or already have been) stolen and misappropriated.

30.     Third, Defendant's attempt to ameliorate the effects of this data breach with a single year of complimentary credit monitoring is inadequate. Plaintiff's and Class members' Private Information was accessed and acquired by cybercriminals for the express purpose of misusing the data. As a consequence, they face the real, immediate, and likely danger of identity theft and misuse of their Private Information. And this can, and in some circumstances already has, caused irreparable harm to their personal, financial, reputational, and future well-being. This harm is even more acute because much of the stolen Private Information, such as a Social Security number, is immutable.

31.     In short, Defendant's myriad failures, including the failure to timely detect an intrusion and failure to timely notify Plaintiff and Class members that their personal and financial information had been stolen due to Defendant's security failures, allowed unauthorized individuals to access, misappropriate, and misuse Plaintiff's and Class members' Private Information for eight months before Defendant finally granted victims the opportunity to take proactive steps to defend herself and mitigate the near- and long-term consequences of the Data Breach.

**D.     Data Breaches Pose Significant Threats**

32.     Data breaches have become a constant threat that, without adequate safeguards, can expose personal data to malicious actors. It is well known that Private Information, Social Security numbers in particular, is an invaluable commodity and a frequent target of hackers.

33.    Statista, a German entity that collects and markets data relating to, among other things, data breach incidents and the consequences thereof, confirms that the number of data breaches has been steadily increasing since it began a survey of data compromises in 2005 with 157 compromises reported that year, to a peak of 1,862 in 2021, to 2022's total of 1,802.[7] The number of impacted individuals has also risen precipitously from approximately 318 million in 2015 to 422 million in 2022, which is an increase of nearly 50%.[8]



34.    This stolen Private Information is then routinely traded on dark web black markets as s simple commodity, with social security numbers being so ubiquitous to be sold at as little as $2.99 apiece and passports retailing for as little as $15 apiece.[9]

---

[7] *Annual Number of Data Breaches and Exposed Records in the United States from 2005 to 2022*, Statista, available at: https://www.statista.com/statistics/273550/data-breaches-recorded-in-the-united-states-by-number-of-breaches-and-records-exposed/ (last accessed last accessed August 15, 2023).
[8] *Id.*
[9] *What is your identity worth on the dark web?* Cybernews (September 28, 2021), available at: https://cybernews.com/security/whats-your-identity-worth-on-dark-web/ (last accessed August 15, 2023).

35.    In addition, the severity of the consequences of a compromised social security number belies the ubiquity of stolen numbers on the dark web. Criminals and other unsavory elements can fraudulently take out loans under the victims' name, open new lines of credit, and cause other serious financial difficulties for victims:

> [a] dishonest person who has your Social Security number can use it to get other personal information about you. Identity thieves can use your number and your good credit to apply for more credit in your name. Then, they use the credit cards and don't pay the bills, it damages your credit. You may not find out that someone is using your number until you're turned down for credit, or you begin to get calls from unknown creditors demanding payment for items you never bought. Someone illegally using your Social Security number and assuming your identity can cause a lot of problems.[10]

36.    This is exacerbated by the fact that the problems arising from a compromised social security number are exceedingly difficult to resolve. A victim is forbidden from proactively changing her or her number unless and until it is actually misused and harm has already occurred. And even this delayed remedial action is unlikely to undo the damage already done to the victims:

> Keep in mind that a new number probably won't solve all your problems. This is because other governmental agencies (such as the IRS and state motor vehicle agencies) and private businesses (such as banks and credit reporting companies) will have records under your old number. Along with other personal information, credit reporting companies use the number to identify your credit record. So using a new number won't guarantee you a fresh start. This is especially true if your other personal information, such as your name and address, remains the same.[11]

37.    In addition, the Federal Trade Commission ("FTC") has brought dozens of cases against companies that have engaged in unfair or deceptive practices involving inadequate protection of consumers' personal data, including recent cases conc against LabMD, Inc., SkyMed

---

[10] United States Social Security Administration, *Identity Theft and Your Social Security Number*, United States Social Security Administration (July 2021), available at: https://www.ssa.gov/pubs/EN-05-10064.pdf  (last accessed August 15, 2023).
[11] *Id.*

International, Inc., and others. The FTC publicized these enforcement actions to place companies like Defendant on notice of their obligation to safeguard customer and patient information.[12]

38.    Given the nature of Defendant's Data Breach, as well as the length of the time Defendant's networks were breached and the long delay in notification to the Class, it is foreseeable that the compromised Private Information has been or will be used by hackers and cybercriminals in a variety of devastating ways. Indeed, the cybercriminals who possess Plaintiff's and Class members' Private Information can easily obtain Plaintiff's and Class members' tax returns or open fraudulent credit card accounts in Class members' names.

39.    Based on the foregoing, the information compromised in the Data Breach is significantly more valuable than the loss of, for example, credit card information in a retailer data breach, because credit card victims can cancel or close credit and debit card accounts.[13] The information compromised in this Data Breach is impossible to "close" and difficult, if not impossible, to change.

40.    To date, Defendant has offered its consumers only one year of identity theft monitoring services. The offered services are inadequate to protect Plaintiff and the Class from the threats they will face for years to come, particularly in light of the Private Information at issue here.

41.    Despite the prevalence of public announcements of data breach and data security compromises, its own acknowledgment of the risks posed by data breaches, and its own

---

[12] *See e.g.*, *In the Matter of SKYMED INTERNATIONAL, INC.*, C-4732, 1923140 (F.T.C. Jan. 26, 2021).
[13] *See* Jesse Damiani, *Your Social Security Number Costs $4 On The Dark Web, New Report Finds*, Forbes (Mar 25, 2020), available at https://www.forbes.com/sites/jessedamiani/2020/03/25/your-social-security-number-costs-4-on-the-dark-web-new-report-finds/?sh=6a44b6d513f1 (last accessed August 15, 2023). *See also Why Your Social Security Number Isn't as Valuable as Your Login Credentials*, Identity Theft Resource Center (June 18, 2021), available at https://www.idtheftcenter.org/post/why-your-social-security-number-isnt-as-valuable-as-your-login-credentials/ (last accessed August 15, 2023).

acknowledgment of its duties to keep Private Information private and secure, Defendant failed to take appropriate steps to protect the Private Information of Plaintiff and the Class from misappropriation. As a result, the injuries to Plaintiff and the Class were directly and proximately caused by Defendant's failure to implement or maintain adequate data security measures for its current and former customers and employees.

**E.  Francesca's Had a Duty and Obligation to Protect Private Information**

42.    Defendant has an obligation to protect the Private Information belonging to Plaintiff and Class members. First, this obligation was mandated by government regulations and state laws, including FTC and various state's rules and regulations. Second, this obligation arose from industry standards regarding the handling of sensitive Private Information. And, Defendant imposed such an obligation on itself with its promises regarding the safe handling of data.[14] Plaintiff and Class members provided, and Defendant obtained, their information on the understanding that it would be protected and safeguarded from unauthorized access or disclosure.

**1.  FTC Act Requirements and Violations**

43.    The FTC has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision making. Indeed, the FTC has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. *See, e.g., FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

---

[14] *See Mom's Meals Notice of Privacy Practices*, FRANCESCA'S.COM (last upd. October 4, 2021), available at https://www.Francesca's.com/webres/File/Website%20Privacy%20Policy.pdf.

44.     In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established guidelines for fundamental data security principles and practices for business.[15] The guidelines note businesses should protect the personal information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct security problems.[16] The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.[17] Defendant clearly failed to do any of the foregoing, as evidenced by the length of the Data Breach, the fact that the Breach went undetected, and the amount of data exfiltrated.

45.     The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction, limit access to sensitive data, require complex passwords to be used on networks, use industry-tested methods for security, monitor the network for suspicious activity, and verify that third-party service providers have implemented reasonable security measures.

46.     The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data by treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an

---

[15] *Protecting Personal Information: A Guide for Business*, Federal Trade Comm'n (October 2016), available at https://www.ftc.gov/tips-advice/business-center/guidance/protecting-personal-information-guide-business (last accessed August 15, 2023).
[16] *Id.*
[17] *Id.*

unfair act or practice prohibited by the FTCA. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

47.    As evidenced by the Data Breach, Defendant failed to properly implement basic data security practices. Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to Plaintiff's and Class members' Private Information constitutes an unfair act or practice prohibited by Section 5 of the FTCA.

48.    Defendant was fully aware of its obligation to protect the Private Information of its current and former customers and employees, including Plaintiff and the Class, and on information and belief, Defendant is a sophisticated and technologically savvy entity that relies extensively on technology systems and networks to maintain its practice, including storing its customers' and employees' Private Information in order to operate its business.

49.    Defendant had and continues to have a duty to exercise reasonable care in collecting, storing, and protecting the Private Information from the foreseeable risk of a data breach. The duty arises out of the special relationship that exists between Defendant and Plaintiff and Class members. Defendant alone had the exclusive ability to implement adequate security measures to its cyber security network to secure and protect Plaintiff's and Class members' Private Information.

### 2.    Industry Standards and Noncompliance

50.    As noted above, experts studying cybersecurity routinely identify businesses as being particularly vulnerable to cyberattacks because of the value of the Private Information which they collect and maintain.

51.    Some industry best practices that should be implemented by businesses dealing with sensitive Private Information like Defendant include but are not limited to: educating all employees, strong password requirements, multilayer security including firewalls, anti-virus and

anti-malware software, encryption, multi-factor authentication, backing up data, and limiting which employees can access sensitive data. As evidenced by the Data Breach, Defendant failed to follow some or all of these industry best practices.

52.     Other best cybersecurity practices that are standard in the industry include: installing appropriate malware detection software; monitoring and limiting network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches, and routers; monitoring and protecting physical security systems; and training staff regarding these points. As evidenced by the Data Breach, Defendant failed to follow these cybersecurity best practices.

53.     Defendant should have also followed the minimum standards of any one of the following frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

54.     Defendant failed to comply with these accepted standards, thereby permitting the Data Breach to occur.

### 3.    Defendant's Own Stated Policies and Promises

55.     Defendant's own published privacy policy states that: "We are committed to the protection of your personal information, and have implemented appropriate and reasonable physical, technical, and administrative safeguards to help prevent unauthorized access to, use of, and disclosure of, your personal information."[18]

---

[18] *Privacy Policy*, Francescas, https://francescas.com/privacy-security/ (last viewed Oct. 11, 2023).

56.     Clearly, Defendant failed to live up to its own stated policies and promises with regards to data privacy and data security as cybercriminals were able to infiltrate its systems and steal the Private Information belonging to Plaintiff and Class members. Further, Defendant delayed almost seven months between discovering the breach and issuing notice. This delay was far beyond what is reasonable acceptable or statutorily mandated.

**F.     Plaintiff and the Class Suffered Harm Resulting from the Data Breach**

57.     Like any data hack, the Data Breach presents major problems for all affected.[19]

58.     The FTC warns the public to pay particular attention to how they keep personally identifying information including Social Security numbers and other sensitive data. As the FTC notes, "once identity thieves have your personal information, they can drain your bank account, run up charges on your credit cards, open new utility accounts, or get medical treatment on your health insurance."[20]

59.     The ramifications of Defendant's failure to properly secure Plaintiff's and Class members' Private Information are severe. Identity theft occurs when someone uses another person's financial, and personal information, such as that person's name, address, Social Security number, and other information, without permission in order to commit fraud or other crimes.

60.     According to data security experts, one out of every four data breach notification recipients become a victim of identity fraud.

---

[19] Paige Schaffer, *Data Breaches' Impact on Consumers*, Insurance Thought Leadership (July 29, 2021), available at https://www.insurancethoughtleadership.com/cyber/data-breaches-impact-consumers (last accessed August 12, 2023).
[20] *Warning Signs of Identity Theft*, Federal Trade Comm'n, available at https://www.identitytheft.gov/#/Warning-Signs-of-Identity-Theft (last accessed March 11, 2023).

61.     Furthermore, Private Information has a long shelf-life because it contains different forms of personal information, it can be used in more ways than one, and it typically takes time for an information breach to be detected.

62.     Accordingly, Defendant's wrongful actions and/or inaction and the resulting Data Breach have also placed Plaintiff and the Class at an imminent, immediate, and continuing increased risk of identity theft and identity fraud. According to a recent study published in the scholarly journal "Preventive Medicine Reports", public and corporate data breaches correlate to an increased risk of identity theft for victimized consumers.[21] The same study also found that identity theft is a deeply traumatic event for the victims, with more than a quarter of victims still experiencing sleep problems, anxiety, and irritation even six months after the crime.[22]

63.     There is also a high likelihood that significant identity fraud and/or identity theft has not yet been discovered or reported. Even data that has not yet been exploited by cybercriminals presents a concrete risk that the cybercriminals who now possess Class members' Private Information will do so at a later date or re-sell it.

64.     Data breaches have also proven to be costly for affected organizations as well, with the average cost to resolve being $4.45 million dollars in 2023.[23]

65.     In response to the Data Breach, Defendant offered to provide certain individuals whose Private Information was exposed in the Data Breach with just a single year of credit

---

[21] David Burnes, Marguerite DeLiema, Lynn Langton, *Risk and protective factors of identity theft victimization in the United States*, Preventive Medicine Reports, Volume 17 (January 23, 2020), available at https://www.sciencedirect.com/science/article/pii/S2211335520300188?via%3Dihub (last accessed August 15, 2023).

[22] *Id.*

[23] *Cost of a Data Breach Report 2023*, IBM Security, available at https://www.ibm.com/reports/data-breach?utm_content=SRCWW&p1=Search&p4=43700072379268622&p5=p&gclid=CjwKCAjwxOymB hAFEiwAnodBLGiGtWfjX0vRlNbx6p9BpWaOo9eZY1i6AMAc6t9S8IKsxdnbBVeUbxoCtk8QAvD_B wE&gclsrc=aw.ds (last accessed August 14, 2023).

monitoring through Kroll. However, this is much shorter than what is necessary to protect against the lifelong risk of harm imposed on Plaintiff and Class members by Defendant's failures.

66.     Moreover, the credit monitoring offered by Defendant is fundamentally inadequate to protect them from the injuries resulting from the unauthorized access and exfiltration of their sensitive Private Information.

67.     Here, due to the Breach, Plaintiff and Class members have been exposed to injuries that include, but are not limited to:

> a.     Theft of Private Information;
>
> b.     Costs associated with the detection and prevention of identity theft and unauthorized use of financial accounts as a direct and proximate result of the Private Information stolen during the Data Breach;
>
> c.     Damages arising from the inability to use accounts that may have been compromised during the Data Breach;
>
> d.     Costs associated with spending time to address and mitigate the actual and future consequences of the Data Breach, such as finding fraudulent charges, cancelling and reissuing payment cards, purchasing credit monitoring and identity theft protection services, placing freezes and alerts on their credit reports, contacting their financial institutions to notify them that their personal information was exposed and to dispute fraudulent charges, imposition of withdrawal and purchase limits on compromised accounts, including but not limited to lost productivity and opportunities, time taken from the enjoyment of one's life, and the inconvenience, nuisance, and annoyance of dealing with all issues resulting from the Data Breach, if they were fortunate enough to learn of the Data Breach despite Defendant's delay in disseminating notice in accordance with state law;
>
> e.     The imminent and impending injury resulting from potential fraud and identity theft posed because their Private Information is exposed for theft and sale on the dark web; and
>
> f.     The loss of Plaintiff and Class members' privacy.

68.     Plaintiff and Class members have suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from their Private Information being accessed by cybercriminals, risks that will not abate within a mere year: the

unauthorized access of Plaintiff and Class members' Private Information, especially their Social Security numbers, puts Plaintiff and the Class at risk of identity theft indefinitely, and well beyond the limited period of credit monitoring that Defendant offered victims of the Breach.

69.     As a direct and proximate result of Defendant's acts and omissions in failing to protect and secure Private Information, Plaintiff and Class members have been placed at a substantial risk of harm in the form of identity theft, and have incurred and will incur actual damages in an attempt to prevent identity theft.

70.     Plaintiff retain an interest in ensuring there are no future breaches, in addition to seeking a remedy for the harms suffered as a result of the Data Breach on behalf of both herself and similarly situated individuals whose Private Information was accessed in the Data Breach.

## G.    EXPERIENCES SPECIFIC TO PLAINTIFF

### a.    Plaintiff Ellie Bley's Experience

71.     Plaintiff Ellie Bley is a former employee of Defendant and worked at Francesca's from 2017 to 2018.

72.     As a condition of her employment, Plaintiff Bley was required to provide her Private Information to Defendant.

73.     Plaintiff Bley became aware of the Data Breach through receipt of Defendant's data breach letter. She learned that information such as full names, Social Security numbers, driver's license/state identification numbers, financial account and/or payment card information and dates of birth were compromised in the breach and she reasonably believes that her information was among those compromised.

74.     After the breach, Plaintiff Bley experienced a dramatic increase in the number of spam phone calls and emails.

75.    As a result of the Data Breach and the resulting suspicious activity, Plaintiff Bley has made reasonable efforts to mitigate the impact of the Data Breach, including, but not limited to, researching the Data Breach and reviewing credit reports and financial account statements for any indications of actual or attempted identity theft or fraud. She has also spent several hours dealing with the Data Breach, valuable time he otherwise would have spent on other activities, including, but not limited to, work and recreation.

76.    As a result of the Data Breach, Plaintiff Bley has suffered anxiety due to the public dissemination of her personal information, which he believed would be protected from unauthorized access and disclosure, including anxiety about unauthorized parties viewing, selling, and using her private information for purposes of identity theft and fraud.  Plaintiff Bley is concerned about identity theft and fraud, as well as the consequences of such identity theft and fraud resulting from the Data Breach.

77.    Plaintiff Bley suffered actual injury from having her Private Information compromised as a result of the Data Breach including, but not limited to (a) damage to and diminution in the value of her Private Information, a form of property that Defendant obtained from her; (b) violation of her privacy rights; and (c) present, imminent and impending injury arising from the increased risk of identity theft and fraud.

78.    As a result of the Data Breach, Plaintiff Bley anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. And, as a result of the Data Breach, he is at a present risk and will continue to be at increased risk of identity theft and fraud for years to come.

## V.    CLASS REPRESENTATION ALLEGATIONS

79.    Plaintiff bring this action on behalf of herself and, pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3), a Class of:

> All persons in the United States whose Private Information was accessed in the Data Breach.

Excluded from the Class are Defendant, its executives and officers, and the Judge(s) assigned to this case. Plaintiff reserve the right to modify, change or expand the Class definition after conducting discovery.

80.    In the alternative, Plaintiff brings this action on behalf of herself and, pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3), a subclass of:

> All persons who are residents of the State of Pennsylvania whose Private Information was accessed in the Data Breach (the "Pennsylvania Subclass").

Excluded from the Subclass are Defendant, its executives and officers, and the Judge(s) assigned to this case.

81.    Numerosity: Upon information and belief, the Class is so numerous that joinder of all members is impracticable with an estimated 58,387 affected individuals.[24] The exact number and identities of individual members of the Class are unknown at this time, such information being in the sole possession of Defendant and obtainable by Plaintiff only through the discovery process. The members of the Class will be identifiable through information and records in Defendant's possession, custody, and control.

82.    Existence and Predominance of Common Questions of Fact and Law: Common questions of law and fact exist as to all members of the Class. These questions predominate over

---

[24]  *See* https://apps.web.maine.gov/online/aeviewer/ME/40/ff7c9ad6-019a-4bf8-a852-0e5c80c70c76.shtml (last visited October 10, 2023).

the questions affecting individual Class members. These common legal and factual questions include, but are not limited to:

a.     When Defendant learned of the Data Breach;

b.     Whether hackers obtained Class members' Private Information via the Data Breach;

c.     Whether Defendant's response to the Data Breach was adequate;

d.     Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the Private Information compromised in the Data Breach;

e.     Whether Defendant's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations, industry standards, and/or its own promises and representations;

f.     Whether Defendant knew or should have known that its data security systems and monitoring processes were deficient;

g.     Whether Defendant owed a duty to Class members to safeguard their Private Information;

h.     Whether Defendant breached its duty to Class members to safeguard their Private Information;

i.     Whether Defendant had a legal duty to provide timely and accurate notice of the Data Breach to Plaintiff and Class members;

j.     Whether Defendant breached its duty to provide timely and accurate notice of the Data Breach to Plaintiff and Class members;

k.     Whether Defendant's conduct violated the FTCA, and/or the Consumer Protection Act invoked herein;

l.     Whether Defendant's conduct was negligent;

m.     Whether Defendant's conduct was *per se* negligent;

n.     Whether Defendant was unjustly enriched;

o.     What damages Plaintiff and Class members suffered as a result of Defendant's misconduct;

p.    Whether Plaintiff and Class members are entitled to actual and/or statutory damages;

q.    Whether Plaintiff and Class members are entitled to additional credit or identity monitoring and monetary relief; and

r.    Whether Plaintiff and Class members are entitled to equitable relief, including injunctive relief, restitution, disgorgement, and/or the establishment of a constructive trust.

83.    <u>Typicality</u>: All of Plaintiff's claims are typical of the claims of the Class since Plaintiff and all members of the Class had their Private Information compromised in the Data Breach. Plaintiff's claims and damages are also typical of the Class because they resulted from Defendant's uniform wrongful conduct. Likewise, the relief to which Plaintiff is entitled to is typical of the Class because Defendant has acted, and refused to act, on grounds generally applicable to the Class.

84.    <u>Adequacy</u>: Plaintiff is an adequate class representative because Plaintiff's interests do not materially or irreconcilably conflict with the interests of the Class plaintiff seeks to represent, Plaintiff retained counsel competent and highly experienced in complex class action litigation, and intend to prosecute her action vigorously. Plaintiff and her counsel will fairly and adequately protect the interests of the Class. Neither Plaintiff nor her counsel have any interests that are antagonistic to the interests of other members of the Class.

85.    <u>Superiority</u>: Compared to all other available means of fair and efficient adjudication of the claims of Plaintiff and the Class, a class action is the most superior. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for members of the Class individually to effectively redress the wrongs done to them. Even if the members of the Class could afford such individual

litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Members of the Class can be readily identified and notified based on, *inter alia*, Defendant's records and databases.

## VI.    CAUSES OF ACTION

### COUNT I
### NEGLIGENCE
**(By Plaintiff on behalf of the Class, or, in the alternative, the Pennsylvania Subclass)**

86.    Plaintiff incorporates and realleges all allegations above as if fully set forth herein.

87.    Defendant owes a duty of care to protect the Private Information belonging to Plaintiff and Class members. Defendant also owes several specific duties including, but not limited to, the duty:

    a.    to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting Private Information in its possession;

    b.    to protect customers' and employees' Private Information using reasonable and adequate security procedures and systems compliant with industry standards;

    c.    to have procedures in place to detect the loss or unauthorized dissemination of Private Information in its possession;

    d.    to employ reasonable security measures and otherwise protect the Private Information of Plaintiff and Class members pursuant to the FTCA;

    e.    to implement processes to quickly detect a data breach and to timely act on warnings about data breaches; and

    f.    to promptly notify Plaintiff and Class members of the Data Breach, and to precisely disclose the type(s) of information compromised.

88. Defendant also owes her a duty because Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45 requires Defendant to use reasonable measures to protect confidential data.

89. Defendant also owes her duty because industry standards mandate that Defendant protect its customers' and employees' confidential Private Information.

90. Defendant also owes her duty because it had a special relationship with Plaintiff's and Class members. Plaintiff and Class members entrusted their Private Information to Defendant on the understanding that adequate security precautions would be taken to protect her information. Furthermore, only Defendant had the ability to protect its systems and the Private Information stored on them from attack.

91. Defendant also owes a duty to timely disclose any unauthorized access and/or theft of the Private Information belonging to Plaintiff and the Class. Their duty exists to allow Plaintiff and the Class the opportunity to undertake appropriate measures to mitigate damages, protect against adverse consequences, and thwart future misuse of their Private Information.

92. Defendant breached its duties to Plaintiff and the Class by failing to take reasonable appropriate measures to secure, protect, and/or otherwise safeguard the Private Information belonging to Plaintiff and Class members.

93. Defendant also breached the duties it owed to Plaintiff and the Class by failing to timely and accurately disclose to Plaintiff and Class members that their Private Information had been improperly acquired and/or accessed.

94. As a direct and proximate result of Defendant's conduct, Plaintiff and the Class were damaged. These damages include, and are not limited to:

- Lost or diminished value of their Private Information;

- Out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their Private Information;

- Lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including but not limited to the loss of time needed to take appropriate measures to avoid unauthorized and fraudulent charges;

- Permanent increased risk of identity theft.

95.    Plaintiff and Class members were foreseeable victims of any inadequate security practices on the part of Defendant and the damages they suffered were the foreseeable result of the aforementioned inadequate security practices.

96.    In failing to provide prompt and adequate individual notice of the Data Breach, Defendant also acted with reckless disregard for the rights of Plaintiff and Class members.

97.    Plaintiff is entitled to damages in an amount to be proven at trial and injunctive relief requiring Defendant to, *inter alia*, strengthen its data security systems and monitoring procedures, conduct periodic audits of those systems, and provide lifetime credit monitoring and identity theft insurance to Plaintiff and Class members.

<u>COUNT II</u>
<u>NEGLIGENCE *PER SE*</u>
**(By Plaintiff on behalf of the Class, or, in the alternative, the Pennsylvania Subclass)**

98.    Plaintiff incorporates and realleges all allegations above as if fully set forth herein.

99.    Section 5 of the FTCA imposes a duty on Defendant to provide fair and adequate data security to secure, protect, and/or otherwise safeguard the Private Information of Plaintiff and Class members.

100.    Defendant violated the FTCA and state rules and regulations by failing to provide fair, reasonable, or adequate computer systems and data security practices to secure, protect, and/or otherwise safeguard Plaintiff's and Class members' Private Information.

26

101.    Defendant's failure to comply with the FTCA and applicable state rules and regulations constitutes negligence *per se*.

102.    Plaintiff and Class members are within the class of persons that the FTCA and state rules and regulations are intended to protect.

103.    It was reasonably foreseeable that the failure to protect and secure Plaintiff's and Class members' Private Information in compliance with applicable laws and industry standards would result in that Information being accessed and stolen by unauthorized actors.

104.    As a direct and proximate result of Defendant's negligence *per se*, Plaintiff and the Class have suffered, and continue to suffer, injuries and damages arising from the unauthorized access of their Private Information, including but not limited to theft of their personal information, damages from the lost time and effort to mitigate the impact of the Data Breach, and permanently increased risk of identity theft.

105.    Plaintiff and Class members are entitled to damages in an amount to be proven at trial and injunctive relief requiring Defendant to, *inter alia*, strengthen its data security systems and monitoring procedures, conduct periodic audits of those systems, and provide lifetime credit monitoring and identity theft insurance to Plaintiff and Class members.

**COUNT III**
**BREACH OF IMPLIED CONTRACT**
**(By Plaintiff on behalf of the Class, or, in the alternative, the Pennsylvania Subclass)**

106.    Plaintiff incorporates and realleges all allegations above as if fully set forth herein.

107.    Plaintiff and the Class provided Defendant with their Private Information.

108.    By providing their Private Information, and upon Defendant's acceptance of her information, Plaintiff and the Class, on one hand, and Defendant, on the other hand, entered into

implied-in-fact contracts for the provision of data security, separate and apart from any express contract entered into between the parties.

109.    The implied contracts between Defendant and Plaintiff and Class members obligated Defendant to take reasonable steps to secure, protect, safeguard, and keep confidential Plaintiff's and Class members' Private Information. The terms of these implied contracts are described in federal laws, state laws, and industry standards, as alleged above. Defendant expressly adopted and assented to these terms in its public statements, representations and promises as described above.

110.    The implied contracts for data security also obligated Defendant to provide Plaintiff and Class members with prompt, timely, and sufficient notice of any and all unauthorized access or theft of their Private Information.

111.    Defendant breached these implied contracts by failing to take, develop and implement adequate policies and procedures to safeguard, protect, and secure the Private Information belonging to Plaintiff and Class members; allowing unauthorized persons to access Plaintiff's and Class members' Private Information; and failing to provide prompt, timely, and sufficient notice of the Data Breach to Plaintiff and Class members, as alleged above.

112.    As a direct and proximate result of Defendant's breaches of the implied contracts, Plaintiff and the Class have been damaged as described herein, will continue to suffer injuries as detailed above due to the continued risk of exposure of Private Information, and are entitled to damages in an amount to be proven at trial.

**COUNT IV**
**UNJUST ENRICHMENT**
**(By Plaintiff on behalf of the Class, or, in the alternative, the Pennsylvania Subclass)**

113.    Plaintiff incorporates and realleges all allegations above as if fully set forth herein.

114.    This count is brought in the alternative to Count III.

115.    Plaintiff and the Class have a legal and equitable interest in their Private Information that was collected and maintained by Defendant.

116.    Defendant was benefitted by the conferral upon it of Plaintiff's and Class members' Private Information and by its ability to retain and use that information. Defendant understood that it was in fact so benefitted.

117.    Defendant also understood and appreciated that Plaintiff's and Class members' Private Information was private and confidential and its value depended upon Defendant maintaining the privacy and confidentiality of that information.

118.    But for Defendant's willingness and commitment to maintain its privacy and confidentiality, Plaintiff and Class members would not have provided or authorized their Private Information to be provided to Defendant, and Defendant would have been deprived of the competitive and economic advantages it enjoyed by falsely claiming that its data-security safeguards met reasonable standards. These competitive and economic advantages include, without limitation, wrongfully gaining customers, gaining the reputational advantages conferred upon it by Plaintiff and Class members, collecting excessive advertising and sales revenues as described herein, monetary savings resulting from failure to reasonably upgrade and maintain data technology infrastructures, staffing, and expertise raising investment capital as described herein, and realizing excessive profits.

119.    As a result of Defendant's wrongful conduct as alleged herein (including, among other things, its deception of Plaintiff, the Class, and the public relating to the nature and scope of the data breach; its failure to employ adequate data security measures; its continued maintenance and use of the Private Information belonging to Plaintiff and Class members without having

adequate data security measures; and its other conduct facilitating the theft of that Private Information), Defendant has been unjustly enriched at the expense of, and to the detriment of, Plaintiff and the Class.

120.    Defendant's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein, including the compiling and use of Plaintiff's and Class members' sensitive Private Information, while at the same time failing to maintain that information secure from intrusion.

121.    Under the common law doctrine of unjust enrichment, it is inequitable for Defendant to be permitted to retain the benefits it received, and is still receiving, without justification, from Plaintiff and the Class in an unfair and unconscionable manner. Defendant's retention of such benefits under circumstances making it inequitable to do so constitutes unjust enrichment.

122.    The benefit conferred upon, received, and enjoyed by Defendant was not conferred officiously or gratuitously, and it would be inequitable and unjust for Defendant to retain the benefit.

123.    Defendant is therefore liable to Plaintiff and the Class for restitution in the amount of the benefit conferred on Defendant as a result of its wrongful conduct, including specifically the value to Defendant of the Private Information that was accessed and exfiltrated in the Data Breach and the profits Defendant receives from the use and sale of that information.

124.    Plaintiff and Class members are entitled to full refunds, restitution, and/or damages from Defendant and/or an order proportionally disgorging all profits, benefits, and other compensation obtained by Defendant from its wrongful conduct.

125.    Plaintiff and Class members may not have an adequate remedy at law against Defendant, and accordingly, they plead this claim for unjust enrichment in addition to, or in the alternative to, other claims pleaded herein.

**COUNT VI**
**BAILMENT**
**(By Plaintiff on behalf of the Class, or, in the alternative, the Pennsylvania Subclass)**

126.    Plaintiff incorporates and realleges all allegations above as if fully set forth herein.

127.    Plaintiff's and Class members' Private Information was provided to Defendant.

128.    In delivering their Private Information, Plaintiff and Class members intended and understood that their Private Information would be adequately safeguarded and protected.

129.    Defendant accepted Plaintiff's and Class members' Private Information.

130.    By accepting possession of Plaintiff's and Class members' Private Information, Defendant understood that Plaintiff and the Class expected their Private Information to be adequately safeguarded and protected. Accordingly, a bailment (or deposit) was established for the mutual benefit of the parties.

131.    During the bailment (or deposit), Defendant owed a duty to Plaintiff and the Class to exercise reasonable care, diligence, and prudence in protecting their Private Information.

132.    Defendant breached its duty of care by failing to take appropriate measures to safeguard and protect Plaintiff's and Class members' Private Information, resulting in the unlawful and unauthorized access to and misuse of Plaintiff's and Class members' Private Information.

133.    Defendant further breached its duty to safeguard Plaintiff's and Class members' Private Information by failing to timely notify them that their Private Information had been compromised as a result of the Data Breach.

134.    Defendant failed to return, purge, or delete the Private Information belonging to Plaintiff and Class members at the conclusion of the bailment (or deposit) and within the time limits allowed by law.

135.    As a direct and proximate result of Defendant's breach of its duty, Plaintiff's and Class members PII that was entrusted to Defendant during the bailment (or deposit) was damaged and its value diminished.

136.    As a direct and proximate result of Defendant's breach of its duties, Plaintiff and the Class suffered consequential damages that were reasonably foreseeable to Defendant, including but not limited to the damages set forth herein.

<u>**COUNT VII**</u>
<u>**INTRUSION UPON SECLUSION**</u>
**(By Plaintiff on behalf of the Class, or, in the alternative, the Pennsylvania Subclass)**

137.    Plaintiff incorporate and reallege all allegations above as if fully set forth herein.

138.    Plaintiff and Class members had a reasonable expectation of privacy in the Private Information that Defendant possessed and/or continues to possess.

139.    By failing to keep Plaintiff's and Class members' Private Information safe, and by misusing and/or disclosing their Private Information to unauthorized parties for unauthorized use, Defendant invaded Plaintiff's and Class members' privacy by:

   a.    Intruding into their private affairs in a manner that would be highly offensive to a reasonable person; and

   b.    Publicizing private facts about Plaintiff and Class members, which is highly offensive to a reasonable person.

140.    Defendant knew, or acted with reckless disregard of the fact that, a reasonable person in Plaintiff's position would consider Defendant's actions highly offensive.

141.    Defendant invaded Plaintiff's and Class members' right to privacy and intruded into Plaintiff's and Class members' private affairs by misusing and/or disclosing their private information without their informed, voluntary, affirmative, and clear consent.

142.    As a proximate result of such misuse and disclosures, Plaintiff's and Class members' reasonable expectation of privacy in their Private Information was unduly frustrated and thwarted. Defendant's conduct amounted to a serious invasion of Plaintiff's and Class members' protected privacy interests.

143.    In failing to protect Plaintiff's and Class members' Private Information, and in misusing and/or disclosing their Private Information, Defendant has acted with malice and oppression and in conscious disregard of Plaintiff's and Class members rights to have such information kept confidential and private, in failing to provide adequate notice, and in placing its own economic, corporate, and legal interests above the privacy interests of its millions of customers and employees. Plaintiff, therefore, seek an award of damages, including punitive damages, on behalf of Plaintiff and the Class.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually, and on behalf of all members of the Class, respectfully request that the Court enter judgment in their favor and against Defendant, as follows:

A.    That the Court certify this action as a class action, proper and maintainable pursuant to Rule 23 of the Federal Rules of Civil Procedure; declare that Plaintiff are proper class representatives; and appoint Plaintiff's Counsel as Class Counsel;

B.    That Plaintiff be granted the declaratory relief sought herein;

C.    That the Court grant permanent injunctive relief to prohibit Defendant from continuing to engage in the unlawful acts, omissions, and practices described herein;

D.    That the Court award Plaintiff and Class members compensatory, consequential, and general damages in an amount to be determined at trial;

E.    That the Court award Plaintiff and Class members statutory damages, and punitive or exemplary damages, to the extent permitted by law;

F.    That the Court award to Plaintiff the costs and disbursements of the action, along with reasonable attorneys' fees, costs, and expenses;

G.    That the Court award pre- and post-judgment interest at the maximum legal rate;

H.    That the Court award grant all such equitable relief as it deems proper and just, including, but not limited to, disgorgement and restitution; and

I.    That the Court grant all other relief as it deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, on behalf of herself and the putative Class, demand a trial by jury on all issues so triable.

Date: October 19, 2023                        Respectfully submitted,

                                              FARNAN LLP

                                              /s/ Michael J. Farnan
                                              Brian E. Farnan (Bar No. 4089)
                                              Michael J. Farnan (Bar No. 5165)
                                              919 North Market St., 12th Floor
                                              Wilmington, DE 19801
                                              Tel: (302) 777-0300
                                              Fax: (302) 777-0301
                                              bfarnan@farnanlaw.com
                                              mfarnan@farnanlaw.com

                                              Daniel O. Herrera (*pro hac vice anticipated*)
                                              Nickolas J. Hagman (*pro hac vice anticipated*)
                                              Alexander J. Sweatman (*pro hac vice anticipated*)
                                              **CAFFERTY CLOBES MERIWETHER**
                                              **& SPRENGEL LLP**
                                              135 S. LaSalle, Suite 3210
                                              Chicago, Illinois 60603
                                              Telephone: (312) 782-4880
                                              Facsimile: (312) 782-4485
                                              dherrera@caffertyclobes.com
                                              nhagman@caffertyclobes.com
                                              asweatman@caffertyclobes.com

                                              *Attorneys for Plaintiff and the Proposed Class*